UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED E. HARTER,

      Plaintiff,

                                 CASE NO. 2:06-CV-13657
v.                               JUDGE ARTHUR J. TARNOW
                                 MAGISTRATE JUDGE PAUL KOMIVES

DR. STEPHEN DAVIS, et al.,

      Defendants.
                             /

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (docket #18)**

I.     RECOMMENDATION: ................................................................. 1
II.    REPORT ............................................................................. 1
     A.    *Background* ................................................................... 1
     B.    *Legal Standards* .............................................................. 4
          1.    *Summary Judgment Standard* ............................................ 4
          2.    *Section 1983 and Eighth Amendment Medical Claims* ........................... 5
     C.    *Analysis* ..................................................................... 9
          1.    *Official Capacity Claims* ................................................ 9
          2.    *Claims Against Defendants Choi, Neighbors, Martin and Armstrong* ............. 10
          3.    *Claims Against Defendant Davis* ......................................... 11
     D.    *Conclusion* .................................................................. 14
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ...................................... 14

\*   \*   \*   \*   \*

I.    RECOMMENDATION: The Court should grant defendants' motion for summary judgment (docket #18).

II.   REPORT:

A.   *Background*

The basic facts underlying this action are not in dispute. Plaintiff Fred E. Harter is a state prisoner currently confined at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan. On July 31, 2003, plaintiff was returned to prison for a parole violation. He was initially housed at the Reception and Guidance Center in Jackson, where he received an intake medical exam

on August 4, 2003. Plaintiff was transferred to the Straits Correctional Facility in Kincheloe, Michigan, and on October 13, 2003, a dental treatment plan was prepared by the dentist at Straits. This treatment plan called for extraction of all of plaintiff's remaining upper teeth and several of his lower teeth, and fitting for a full upper denture plate and a partial lower denture plate. *See* Def.'s Br., Ex. 1.[1] According to defendants, plaintiff was put on the list for further treatment according to this plan. On September 2, 2004, one lower tooth was filled pursuant to the dental treatment plan. *See id.*, Ex. 2. The treating dentist noted in his report on this procedure that plaintiff's remaining treatment was being deferred because plaintiff indicated that he would be released in five months, and because he declined to have extractions pursuant to the treatment plan. *See id.* Plaintiff disputes this, contending that the dentist terminated the interview once he informed the dentist of his release date, and that he did not refuse to have any teeth extracted. *See* Pl.'s Br., Ex. A, Aff. of Fred E. Harter, ¶ 5. In December 2004, plaintiff was transferred to Marquette Branch Prison. Plaintiff claims that while there he had one tooth extracted and another filled, and was told that another lower front tooth needed to be extracted. *See id.*, ¶ 6. Defendants contend that plaintiff's medical records fail to reflect this treatment.

Plaintiff was transferred to JCF on February 7, 2005. Plaintiff claims that, upon his intake examination, he informed officials at JCF of his need for dental treatment and was told to file a kite to the dental department. Plaintiff claims that he immediately did so. *See id.*, ¶ 7. Defendants contend that plaintiff's dental records show that a kite was not filed until June 27, 2005. *See* Def.'s Br., Ex. 3. In any event, plaintiff was seen by defendant Dr. Stephen Davis on June 28, 2005. *See id.*, Ex. 4. Defendant Davis performed an emergency oral examination, and extracted plaintiff's

---

[1]Plaintiff's medical records have been submitted as exhibits to defendant's brief under seal.

loose front lower tooth. Defendant Davis also prescribed Tylenol for pain. *See id*. Plaintiff was again examined on December 19, 2005, at which time it was determined that plaintiff needed a cleaning, one filling, and impressions for full upper and partial lower dentures. *See id*., Ex. 5. Plaintiff was placed on the prison's treatment lists for each of these services. *See id*. Plaintiff received the cleaning on February 27, 2006, *see id*., Ex. 6, the filling on July 25, 2006, *see id*., Ex. 7, was fitted for his dentures on August 21, 2006, *see id*., Ex. 8, and received the dentures on December 14, 2006, *see id*., Ex. 9.

On August 17, 2006, plaintiff commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 and the Eighth Amendment. Defendants are Dr. Davis; two additional dentists, Jong Choi and Bonita Davis Neighbors; two additional officials of the Michigan Department of Corrections, Nancy Martin and James Armstrong; and the unknown dentist who treated him at the Straits Correctional Facility. Plaintiff claims that defendants were deliberately indifferent to his serious dental needs in violation of the Eighth Amendment by failing to provide timely treatment for his dental problems. Plaintiff seeks compensatory and punitive damages. Defendants previously filed a motion to dismiss plaintiff's complaint for lack of exhaustion. This motion was denied by the Court.

The matter is currently before the Court on defendants' motion for summary judgment, filed on June 15, 2007.[2] Defendants contend that they are entitled to summary judgment because: (1) plaintiff has failed to exhaust his claims; (2) there is no evidence that defendants Choi, Neighbors,

---

[2]The "unknown dentist" defendant has not been identified or served, and has not appeared in this action. The motion before the Court was filed by the named defendants–Choi, Davis, Martin, Neighbors, and Armstrong. I use "defendants" throughout this Report to refer to these defendants.

Martin, and Armstrong were personally involved in the alleged deprivation of plaintiff's rights; (3) there is no evidence that defendant Davis was deliberately indifferent to plaintiff's serious medical needs; (4) they are entitled to qualified immunity; and (5) with respect to plaintiff's claims against them in their individual capacities, there are entitled to sovereign immunity. Plaintiff filed a response to the motion on August 7, 2007. For the reasons that follow, the Court should grant defendants' motion for summary judgment.

B. *Legal Standards*

1. *Summary Judgment Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party

need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

2. *Section 1983 and Eighth Amendment Medical Claims*

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). Further, the Supreme Court has made clear that liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Monell v. New York City Dep't*

5

*of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, "[t]o recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). As the Sixth Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate*."

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also, Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting

6

*Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429

7

U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard,

> a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id*. at 843-44. However, prison officials may escape liability if they show that they in fact did

not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id*. at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiff's claims that defendants denied medically necessary dental treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

C. *Analysis*

1. *Official Capacity Claims*

Plaintiff asserts his claims against defendants in both their individual and official capacities. To the extent plaintiff's claims are against defendants in their official capacities, however, defendants are immune from suit. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the amendment expressly

prohibits only suits against states by citizens of other states, the Supreme Court has long held that the Eleventh Amendment also bars suits by citizens of the state being sued. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion). Further, as the Supreme Court made clear in *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), the Eleventh Amendment bars suits against state officials sued in their official capacity. *See id.* at 71; *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000). Accordingly, defendants are entitled to summary judgment with respect to plaintiff's claims against them in their official capacities.[3]

2. *Claims Against Defendants Choi, Neighbors, Martin and Armstrong*

The Court should also conclude that defendants Choi, Neighbors, Martin, and Armstrong are entitled to summary judgment with respect to plaintiff's claims against them in their individual capacities because plaintiff has failed to demonstrate that they were personally involved in the alleged deprivation of his Eighth Amendment rights. As noted above, a defendant is liable under § 1983 only if he or she is personally involved in a constitutional deprivation. Here, plaintiff does not allege that any of these defendants were personally involved in his dental treatment. Rather, these defendants had no role beyond responding to his grievances. This is insufficient to show their personal involvement. The Constitution does not require a state to establish a prison grievance system, and thus the denial of, or failure to consider, a grievance does not state a constitutional claim under § 1983 or render the reviewing official personally involved in the deprivation alleged in the grievance. *See Lee v. Michigan Parole Bd.*, 104 Fed. Appx. 490, 493 (6th Cir. 2004); *Martin v.*

---

[3]Plaintiff's claims against defendants in their individual capacities are not barred by the Eleventh Amendment, even though those claims are based on "official" actions taken by defendants. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991).

*Harvey*, No. 00-1439, 2001 WL 669983, at *2 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (as against defendants whose only involvement was the denial of administrative remedies and the "failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants directly participated . . . in the claimed . . . acts[]."); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989) ("The mere fact that these defendants found plaintiff Martin's grievance concerning the seizure to be without merit is insufficient to state a claim against them."). Accordingly, the Court should grant defendants' motion for summary judgment with respect to plaintiff's claims against defendants Choi, Neighbors, Martin, and Armstrong.

      3.     *Claims Against Defendant Davis*

With respect to plaintiff's claims against defendant Davis, the Court should conclude that plaintiff has failed to establish a genuine issue of material fact with respect to whether Davis was deliberately indifferent to his serious medical needs.

At the outset, it is questionable whether plaintiff has established a serious medical need at all. To be sure, a number of courts have found that a delay in providing dentures or other dental care may implicate a serious medical need; in each of those cases, however, the prisoner alleged that the delay in or denial of treatment caused other severe symptoms, such as headaches, disfigurement, bleeding, severe pain, and loss of weight. *See Farrow v. West*, 320 F.3d 1235, 1244-45 (11th Cir. 2003); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001); *Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989). As the *Farrow* court explained, however, these cases do not stand for the proposition that "merely having few or no teeth and a definite need for dentures *per se* constitutes a serious medical need in each case." *Farrow*, 320 F.3d at 1244. Here, while plaintiff now claims

that he had such symptoms, the medical records belie this claim. The medical records show that plaintiff did not request additional medical care or send health care requests which claimed he was suffering from these types of severe symptoms. Likewise, the medical records belie any claim that plaintiff suffered weight loss due to an inability to chew food. Plaintiff's contrary contentions in his affidavit are insufficient to withstand summary judgment. As the Sixth Circuit has explained, "an inmate who complains that [a] delay in medical treatment rose to a constitutional violation, must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Because the alleged delay in treating plaintiff and providing him with dentures did not result in any severe symptoms, he cannot establish that he was denied a serious medical need. *See McCauley v. Johnson*, No. 7:07cv00244, 2007 WL 3146450, at *3 n.4 (W.D. Va. Oct. 25, 2007).

In any event, even if plaintiff could establish the existence of a serious medical need, he cannot show that defendant Davis was deliberately indifferent to that need. The evidence with respect to Davis shows that plaintiff complained of a loose tooth in June 2005, and was seen the following day by Davis, who removed it. *See* Def.'s Br., Ex. 4. Subsequently, in December 2005, plaintiff was given a complete examination, and Dr. Davis determined plaintiff needed a cleaning, one filling, and dentures. *See id.*, Ex. 5. Davis placed plaintiff on the dental treatment lists pursuant to MDOC policy, which provides:

> [P]rosthodontics is a routine dental service, and as such, prisoners requiring these procedures will not be prioritized before those who require oral surgery, periodontal, and/or restorative services. The prosthodontic services that are available will be provided as time and prisoner availability permit. A denture/impression list will be maintained in each clinic and each prisoner will be seen in the order their name appears on the lists.

12

MDOC POLICY DIRECTIVE 04.06.150(F). Following his placement on this list, plaintiff was fitted for dentures on August 21, 2006, and received his dentures on December 14, 2006. *See* Def.'s Br., Exs. 8-9.

In these circumstances, plaintiff cannot establish that defendant Davis was deliberately indifferent to his dental needs. As explained above, there is no evidence to suggest that plaintiff was suffering from any severe symptoms caused by his dental problems, or any other facts were known to Davis from which he should have concluded that plaintiff required emergency care and could not wait his turn on the list pursuant to PD 04.06.150(F). And in the absence of any such signs of a need for emergency care, Davis was not deliberately indifferent to his dental needs by placing plaintiff on the ordinary list for dentures and other treatment. *See Miles v. Daniel*, 231 Fed. Appx. 591, 592 (9th Cir. 2007); *McCauley*, 2007 WL 3146450, at *3; *Greenlaw v. Hill*, No. 05-1448-BR, 2007 WL 1876515, at *3 (D. Or. June 27, 2007); *Halla v. Schriro*, No. CV 05-0320, 2006 WL 3735983, at *5 (D. Ariz. Dec. 15, 2006); *Ivy v. Murray*, No. H-03-2543, 2005 WL 1766249, at *4-*5 (S.D. Tex. July 26, 2005). As another court has explained in rejecting a similar claim:

> Plaintiff would have the Court conclude that the delays necessitated by the ADOC schedule evince deliberate indifference on the part of Defendants, but the Court cannot do so. With a large and growing prison population, Defendants necessarily must schedule dental care and other services, providing emergency care before routine care and providing routine care on a scheduled basis. Plaintiff essentially argues for a different policy-providing routine care on the basis of greatest need rather than on the basis of when the care is sought. In addition to the fact that Plaintiff presents no evidence that he would have received more prompt care under such a policy (that his dental needs were greater than those of other inmates), a disagreement with the wisdom or compassion of Defendants' scheduling policy does not establish that Defendants acted with deliberate indifference. Even if a jury could conclude that Defendants' scheduling of Plaintiff's care was negligent, or grossly negligent, Plaintiff would not establish the required mental intent.

*Lanzeiri v. Stewart*, No. CV021975, 2005 WL 2449998, at *6 (D. Ariz. Sept. 30, 2005).

In short, while plaintiff may have been forced to wait for dental treatment or his dentures longer than he would have preferred, there is no evidence that defendant Davis subjectively acted with deliberate indifference to plaintiff's dental needs by placing him on the ordinary dental treatment lists. In the absence of such evidence, defendant Davis is entitled to summary judgment.

D.  *Conclusion*

In view of the foregoing, the Court should conclude that there are no genuine issues of material fact with respect to whether defendants Choi, Neighbors, Martin, and Armstrong were personally involved in the alleged deprivation of plaintiff's rights; that there are no genuine issues of material fact with respect to whether the defendant Davis was deliberately indifferent to plaintiff's serious dental needs; and that defendants are entitled to Eleventh Amendment immunity with respect to plaintiff's claims against them in their official capacities.[4] Accordingly, the Court should grant defendants' motion for summary judgment.

III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.

---

[4]These conclusions make it unnecessary to address defendants' exhaustion and qualified immunity arguments. *See* 42 U.S.C. § 1997e(c)(2) (court may dismiss claim on merits notwithstanding failure to exhaust administrative remedies); *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (in conducting qualified immunity analysis, court whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?", and only if this question is answered in the affirmative does the court proceed to consider whether that right was clearly established).

1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/28/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on February 28, 2008.

s/Eddrey Butts
Case Manager